UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO

| | | |
|---|---|---|
| ANTONIO TANON, | ) | CASE NO. 3:05 CV 7438 |
| | ) | |
| Plaintiff, | ) | JUDGE DAVID A. KATZ |
| | ) | |
| v. | ) | |
| | ) | <u>OPINION AND ORDER</u> |
| ERICA WARDLAW, | ) | |
| | ) | |
| Defendant. | ) | |

On November 16, 2005, plaintiff <u>pro se</u> Antonio Tanon filed the above-captioned action under 42 U.S.C. § 1983 against Marion Correctional Institution Teacher Erica Wardlaw. In the complaint, Mr. Tanon alleges Ms. Wardlaw discriminated against him based on his Hispanic national origin. He seeks injunctive and monetary relief.

*Background*

Mr. Tanon alleges that all inmates at the Marion Correctional Institution ("MCI") who do not have a high school diploma are required to enroll in the prison's GED school program. Mr. Tanon contends that his placement in this program is erroneous because he already has a high school diploma from Puerto Rico. He claims he provided a photocopy of his high school diploma to the MCI school; however, the administrator would not accept it because the certificate was an

unofficial copy, which was not readily verifiable. Mr. Tanon was told the administrator was working to authenticate the diploma but Mr. Tanon finds this statement to be disingenuous. He claims he is being treated differently from other students because of his national origin.

Mr. Tanon further contends that he and MCI teacher Ms. Wardlaw have an acrimonious relationship. Mr. Tanon claims Ms. Wardlaw tore up a Puerto Rican flag that he had constructed during class and yelled at him in the presence of other students. He indicates that "every time [he] is in her class, Miss Wardlaw finds a way to write me up for nothing." (Compl. at 3.) The conduct reports attached to the complaint charge Mr. Tanon with, among other things, disobeying a direct order and refusing to class work. On one occasion, Ms. Wardlaw stated that Mr. Tanon arrived at school, proceeded to lay down in a chair and refused to do school work. (Compl. Ex. F.) In another report she indicated he refused to work and spent his class time drawing pictures. (Compl. Ex. G.) On another occasion he allegedly left class at 9:20 a.m. and failed to return. (Compl. Ex. H.) In October 2004, she claimed he showed up almost thirty minutes late for school and then sat with his arms crossed, refusing to do any work. (Compl. Ex. I.) The Education Administrator stated that Mr. Tanon "walk[ed] around the room distracting others and drawing attention to [him]self." (Compl. Ex. J.) Mr. Tanon was found not guilty of some of the charges against him, but was found guilty in several instances of failing to obey a direct order. (Compl. Ex. L.) He asserts that Ms. Wardlaw has discriminated against him based upon his Puerto Rican heritage.

*Analysis*

A prisoner must allege and show that he has exhausted all available administrative remedies before filing a civil rights action in federal court to challenge the conditions of his

confinement. 42 U.S.C. §1997e; Wyatt v. Leonard, 193 F.3d 876, 878 (6th Cir. 1999); Brown v. Toombs, 139 F.3d 1102, 1104 (6th Cir. 1988), cert. denied, 525 U.S. 833 (1998). To establish that he exhausted his remedies prior to filing suit, the prisoner must plead his claims with specificity and show that he has exhausted his administrative remedies with respect to each allegation against each defendant by attaching to the complaint a copy of the applicable administrative dispositions or, in the absence of written documentation, describing with specificity the administrative proceedings and their outcomes. Knuckles-El v. Toombs, 215 F.3d 640, 642 (6th Cir. 2000). The prisoner must exhaust each specific claim against each defendant named in the complaint to satisfy the exhaustion requirement. See Curry v. Scott, 249 F.3d 493, 504-05 (6th Cir. 2001). Moreover, the prisoner must specifically grieve allegations of retaliation or conspiracy against the defendants he names in his complaint. Garrison v. Walters, No. 00-1662, 2001 WL 1006271 (6th Cir. Aug. 24, 2001); Curry, 249 F.3d at 504-05. In the absence of such particularized averments concerning exhaustion, the action must be dismissed. Id.

Ohio Administrative Code § 5120-9-31 sets forth a three-step grievance procedure for administrative remedies for inmates housed in Ohio prisons. Under this section, an inmate initiates the grievance procedure by filing an Informal Complaint Resolution form with the prison official whose area of responsibility is most related to the grievance. OHIO ADMIN. CODE § 5120-9-31(J)(1). If the inmate is dissatisfied with the informal complaint response, or if there has been no response to the complaint, the inmate may file a Notification of Grievance form with the Institutional Inspector. OHIO ADMIN. CODE § 5120-9-31(J)(2). If this second step does not provide satisfactory results, the inmate may file an appeal with the office of the Chief Inspector. OHIO ADMIN. CODE § 5120-9-31(J)(3). The Chief Inspector's written response to the inmate's appeal is

the final decision on the grievance.

There is no indication that Mr. Tanon exhausted his administrative remedies for each claim against Ms. Wardlaw. He attaches several copies of Informal Complaint Resolution forms but there is no indication that he filed formal grievances with respect to each of these incidents and completed the administrative grievance process through to the Chief Inspector. The inmate bears the burden of establishing exhaustion of administrative remedies. Brown, 139 F.3d at 1104. Mr. Tanon has not satisfied that burden.

*Conclusion*

Accordingly, this action is dismissed without prejudice pursuant to 42 U.S.C. §1997e. Further, the court certifies pursuant to 28 U.S.C. § 1915(a)(3) that an appeal from this decision could not be taken in good faith.[1]

IT IS SO ORDERED.

s/ DAVID A. KATZ   2/13/2006

DAVID A. KATZ
UNITED STATES DISTRICT JUDGE

---

[1] 28 U.S.C. § 1915(a) provides, in pertinent part:

An appeal may not be taken in forma pauperis if the trial court certifies that it is not taken in good faith.